IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DUANE A. WILDEY,          )
                               )
            Plaintiff,    )     Civil No. 09-3087-JE
                               )
              v.        )     OPINION AND ORDER
                               )
MICHAEL J. ASTRUE,       )
Commissioner of Social Security,  )
                               )
            Defendant.   )
_____)

Arthur W. Stevens III
Black, Chapman, Webber & Stevens
221 Stewart Ave., #209
Medford, OR 97501

     Attorney for Plaintiff


Dwight C. Holton
U.S. Attorney, District of Oregon
Adrian L. Brown
Asst. U.S. Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

Nancy A. Mishalanie
Special Asst. U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075

      Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Duane Wildey brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for disability insurance benefits under Title II of the Social Security Act (the Act) and supplemental security income under Title XVI of the Act. Plaintiff seeks an Order remanding this action to the Social Security Administration (the Agency) for an award of benefits.

For the reasons set out below, the decision of the Commissioner should be affirmed.


## Procedural Background

Plaintiff has filed several applications for disability insurance benefits and supplemental security income payments. After earlier applications were denied, plaintiff filed new applications on May 9, 2000. After those applications had been denied initially and upon reconsideration, at plaintiff's request, a hearing was held before Administrative Law Judge (ALJ) William Stewart, Jr., on May 17, 2002. In a decision dated July 22, 2002, ALJ Stewart, Jr. found that plaintiff was not disabled within the meaning of the Act. That decision became the final decision of the Commissioner, and gave rise to a rebuttable presumption of continuing nondisability.

Plaintiff filed the applications for disability insurance benefits and supplemental security income upon which the present action is based on November 15, 2002, alleging that he had been disabled since July 23, 2002. After the applications were denied initially and

upon reconsideration, plaintiff timely requested a hearing before an Administrative Law Judge (ALJ).

A hearing was held before ALJ John J. Madden, Jr., in Medford, Oregon, on August 2, 2005. Plaintiff, who was represented by counsel, and Kay Wise, a Vocational Expert (VE), testified at the hearing. A second hearing was scheduled after plaintiff's counsel indicated that he wished to submit additional medical records. Plaintiff and VE Wise again testified at that hearing, which was held on July 19, 2006.

On November 22, 2006, ALJ Madden, Jr. issued a decision finding that plaintiff was not disabled within the meaning of the Act. That decision became the final decision of the Commissioner on July 23, 2006, when the Appeals Council denied plaintiff's request for review.

While plaintiff's appeal of that decision was pending in this court, the parties stipulated to a remand to allow plaintiff's counsel to add a letter to the record, and to provide the Appeals Council an opportunity to consider the letter. After considering the letter from plaintiff's counsel, on September 11, 2009, the Appeals Council again denied plaintiff's request for review. Following that decision, plaintiff sought judicial review in this court.

**Factual Background**

Plaintiff was born on August 2, 1953. He was 48 years old at the date of alleged onset of disability in the present applications, and was 53 years old when the ALJ issued his decision. Plaintiff graduated high school, and has completed a one-year Emergency Medical Technician training program. He has past relevant work as a bowling mechanic/technician, a janitor, a roofer helper, a plumber, a pool service worker, and a lumber mill maintenance worker.

The relevant portions of plaintiff's medical history will be addressed in the discussion below.

**Disability Analysis**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled. If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four. The Commissioner determines whether the claimant is able to perform work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five. 20 C.F.R. § 404.1520(e).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a

significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. Id.

### ALJ's Findings

At the first step of his analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability on July 23, 2002.

At the second step, the ALJ found that plaintiff's degenerative disc disease of the cervical spine, status-post-fusion and laminectomy, was a severe impairment.

At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the presumptively disabling impairments listed in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1.

The ALJ next assessed plaintiff's residual functional capacity (RFC). He found that plaintiff could "lift and carry 20 pounds occasionally and 10 pounds frequently, sit for six hours per eight-hour work day, stand and/or walk for less than six hours per eight-hour work day, and [was] limited to no more than occasional stooping or crawling." In evaluating plaintiff's RFC, the ALJ found that plaintiff's description of the severity of his symptoms and impairments was not wholly credible.

At the fourth step of his assessment, the ALJ found that plaintiff could not perform any of his past relevant work.

At the fifth step, the ALJ found that plaintiff could work as a maintenance dispatcher, a courier/driver, and an electronics inspector. Based upon this finding, the ALJ concluded that plaintiff was not disabled within the meaning of the Act.

### Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

### Discussion

Plaintiff contends that the ALJ failed to give proper weight to the opinions of treating and examining physicians, erred in concluding that he had not overcome a presumption of non-disability arising from an earlier unfavorable decision, improperly substituted his own

opinion for that of plaintiff's doctor, failed to properly evaluate the combined effect of his impairments, erred in finding that plaintiff and plaintiff's wife were not wholly credible, and failed to formulate a vocational hypothetical that accurately reflected plaintiff's residual functional capacity.

1. **ALJ's analysis of medical opinions**

Plaintiff contends that the ALJ erred in rejecting the opinions of Dr. Robert Jackman and Dr. Raphael Allred, his treating physicians.

Because treating physicians have a greater opportunity to know and observe their patients, their opinions are given greater weight than the opinions of other physicians. Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir.).  An ALJ must provide clear and convincing reasons for rejecting a treating physician's uncontroverted opinions, Lester v. Chater, 81 F.2d 821, 830-31 (9th Cir. 1995), and must provide "specific and legitimate reasons," which are supported by substantial evidence in the record, for rejecting opinions of a treating physician which are contradicted by the opinions of other doctors.  Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (citing Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)).

a. **Dr. Jackman**

Dr. Jackman, one of plaintiff's treating physicians, completed an assessment of plaintiff's residual functional capacity dated March 14, 2005.  Dr. Jackman listed plaintiff's diagnoses as "C6-7 radiculopathy, C4-5 spinal stenosis: mild."  He indicated that plaintiff had "chronic pain/paresthesia," and listed the "signs, findings, and associated symptoms" of plaintiff's impairments as including tenderness, muscle spasm, muscle weakness, spastic gait, impaired sleep, reflex changes, motor loss, a propensity to drop items, and reduced grip strength.  Dr. Jackman indicated that plaintiff's range of motion was significantly reduced, and opined that his symptoms were severe enough to constantly interfere with the attention

and concentration needed to perform even simple work tasks.  He opined that plaintiff could sit for 45 minutes or stand for 15 minutes at a time before needing to change positions, and that he could stand/walk for less than a total of 2 hours during an 8-hour work day. Dr. Jackman further opined that plaintiff could not tolerate even "low stress" jobs, that he would need to take unscheduled work breaks during which he could lie down, and would likely miss work more than four days per month because of his impairments.

The ALJ disagreed with Dr. Jackman's opinion as to the severity of plaintiff's impairments.  He asserted that Dr. Jackman's opinion was "based on a one-time examination. . . and reflects the claimant's subjective complaints in contrast to the overall evidence that does not support such significant restrictions."  He rejected Dr. Jackman's assessment as "unrealistic based on the objective findings noted in the record."

It is apparent that the ALJ thought that the opinions of Dr. Gayle Schantzen, whom Dr. Jackman had identified elsewhere as plaintiff's primary care physician, much more accurately reflected the "objective findings noted in the record."  The ALJ cited Dr. Schantzen's observation that plaintiff had not been compliant with her instructions concerning the use of methadone and had been "verbally abusive to a faculty physician. . . ." He noted that Dr. Schantzen had assessed plaintiff with paresthesias, but had observed that "this did not correlate with any anatomical nerve distribution," and had subsequently noted that plaintiff's reports concerning his symptoms "were not consistent with her findings on examination."  The ALJ quoted this excerpt of Dr. Schantzen's assessment following plaintiff's visit on July 29, 2004:

> I am always concerned when it comes to this [claimant] how much of his
> pains are real and how much are malingering.  He is attempting to be declared
> completely disabled in that he just does not want to work.  I witnessed him
> in July 12, 2004, when I saw him downtown walking without his cane and
> throwing some items into the trunk of his car with no obvious effort.  Also at
> the same time, when the welfare office attempts to send him out to Goodwill,
> he becomes almost verbally abusive with people out there and with the
> welfare workers stating he is going to send his lawyer to see them.  He always
> comes to the clinic with his cane, but yet I have seen him on at least two
> occasions outside the clinic walking without a cane and appearing to walk just
> fine.  He had seen Dr. Ryan earlier about his right arm and she planned to

do an EMG and nerve conduction study, but that has not yet been done . . . .
I continue to be puzzled and confounded with this [claimant's] complaints.

Because Dr. Jackman's opinions were contradicted by other medical opinions in the record, the ALJ was required to support their rejection with specific and legitimate reasons that were supported by substantial evidence in the record. In the context of his examination of the medical evidence, which cited extensively to records that were inconsistent with Dr. Jackman's assessment, the ALJ met that burden. The Commissioner correctly notes that Dr. Jackman did not treat plaintiff for the impairments upon which his current claim of disability is based, but instead treated him for gastrointestinal issues. The Commissioner notes that Dr. Jackman addressed plaintiff's back and neck issues in only one record, which was characterized as a chart review to assess the adequacy of plaintiff's methadone maintenance. As the Commissioner correctly notes, the records that Dr. Jackman reviewed indicated only mild impairments, and Dr. Jackman cited a single visit in response to the query as to the "frequency and length of contact" with plaintiff included in the residual functional capacity assessment form that he completed. Dr. Jackman's assessment of plaintiff's residual functional capacity appears to have been based on plaintiff's own "self-reports," and such assessments may be rejected if a claimant is found to be not credible. See, e.g., Rommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (if ALJ properly discounts claimant's credibility, ALJ may reject treating physician's opinions based upon claimant's self-reports). As discussed below, the ALJ found that plaintiff was not wholly credible, and adequately supported that conclusion.


b. **Dr. Allred**

At the request of Disability Determination Services, Dr. Raphael Allred, another of plaintiff's treating physicians, completed a one-page assessment of plaintiff's functional capacity on January 22, 2003. Dr. Allred opined that plaintiff could lift 10 pounds occasionally and 5 pounds frequently, could walk/stand for one hour and sit for one-half hour

during an 8-hour work day, and had "poor activities of daily living," was "unable to walk without cane," and had "secondary depression."  He indicated that these restrictions were based upon plaintiff's complaints and objective findings, which included severe muscle spasms, paresthesias, and decreased mobility.  Dr. Allred indicated that these restrictions first began in 1985, and were expected to last "at least 2 yrs."

    The ALJ gave "little weight" to Dr. Allred's opinion concerning plaintiff's functional capacity on the grounds that it was not supported by objective medical evidence.  He cited, as inconsistent with Dr. Allred's highly restrictive assessment, "minimal findings upon examination and diagnostic testing" such as an MRI taken in December, 2002.  That MRI "showed status-post C5-C6 spinal fusion and old compression deformities in the lower cervical and upper thoracic spine, but otherwise normal cervical spine; and showed mild narrowing of the spinal canal at L4-L5, but otherwise normal lumbar spine." The ALJ noted that Dr. Allred's assessment included a reference to plaintiff's need to use a cane, and plaintiff's paresthesias "of which there is no medical basis. . . ."  He also noted that testing did not produce evidence of radiculopathy. The ALJ concluded that Dr. Allred's opinion "appears to reflect the claimant's subjective complaints and is not a medically determinable assessment."  He added that "such a restricted capacity dating from 1985 is not sensible, considering that since that time, the claimant has engaged in substantial gainful activity and demonstrated a significantly higher level of functional capacity."

    Because Dr. Allred's opinion as to the severity of plaintiff's impairments was inconsistent with some other medical opinions in the record, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence in the record, for its rejection.  The ALJ met that burden.  The ALJ correctly noted that plaintiff had engaged in activities since 1985 that were inconsistent with Dr. Allred's assertion that the restrictions he found had existed since that date, and he cited substantial medical evidence that was inconsistent with the severe functional restrictions that Dr. Allred assessed.  That evidence included the results of an MRI of plaintiff's lumbar and cervical spine taken on December 17,

2002, which showed only mild narrowing of the spinal canal at the L4-5 level, and "old compression deformities" that caused some mild narrowing of the spinal canal that was characterized as "probably not clinically significant." These objective studies were carried out and evaluated only a few months before Dr. Allred offered his opinion that plaintiff's functions were severely restricted. The ALJ's conclusion that Dr. Allred's assessment reflected plaintiff's own "subjective complaints" rather than "medically determinable" evidence appears to be well founded. As noted above, when an ALJ properly discounts a claimant's credibility, he may reject a treating physician's opinions that are based on those reports.

2. **ALJ's Credibility Determinations**

a. **Plaintiff's Credibility**

At the first of the two hearings related to the present action, plaintiff testified as follows. Plaintiff experienced numbness and a loss of strength in his right hand, which varied in severity depending on the position of his head, and which his doctors were not attempting to treat. His medications made him absent-minded and dizzy. Plaintiff used a cane for his "psychological benefit" because he did not want to fall down, and the cane made him feel more secure. Use of the cane had not been prescribed. Plaintiff needed to lie down every two hours, and stayed in bed all day on his frequent "bad" days. He needed to brace himself while sitting in a chair in order to take weight off his back. On good days, plaintiff might go shopping and watch television, and on bad days, all the domestic chores were performed by plaintiff's wife and oldest daughter. At the second hearing, plaintiff testified that Dr. Nozipo Maraire had considered surgery on his back, and had referred him to an anesthesiologist. The anesthesiologist determined that the procedure should be done, but it was not performed because plaintiff's insurance company refused to pay for it and plaintiff's blood pressure was too low.

The ALJ found that plaintiff's testimony concerning the severity and limiting effects of his impairments was not fully credible. Plaintiff contends that the ALJ failed to provide the required support for this conclusion.

### Standards

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). If a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony concerning the severity of symptoms merely because they are unsupported by objective medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) citing Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1990)(en banc). Unless there is affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Id., quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).

An ALJ rejecting a claimant's testimony may not simply provide "general findings," but instead must identify the testimony that is not credible and the evidence that undermines the claimant's complaints. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). In addition, SSR 96-7 requires an ALJ to consider the entire record and to consider several factors, including the claimant's daily activities, medications taken and their effectiveness, treatment other than medication, measures other than treatment used to relieve pain or other symptoms, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." An ALJ may support a determination that the claimant was not entirely credible by identifying inconsistencies or contradictions between the claimant's complaints and his activities of daily living. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).

**Analysis**

Plaintiff clearly produced evidence of underlying impairments that could be expected to cause some of the  symptoms of which he complained.  However, the record also includes evidence of malingering.  As noted above, Dr. Schantzen, plaintiff's treating physician, expressed concern about "how much of his pains are real and how much are malingering," and cited examples of behavior that cast substantial doubt upon the veracity of his complaints.  Because there was evidence of malingering, the ALJ was not required to provide clear and convincing reasons for discounting plaintiff's credibility.  The reasons that the ALJ provided for his credibility determination satisfied that standard, and would have also satisfied the "clear and convincing" standard that applies in the absence of evidence of malingering.

In support of his credibility determination, the ALJ cited evidence of malingering, and a number of inconsistencies and discrepancies in plaintiff's claims and in his manner of presenting to treating and examining doctors.  He cited a number of objective medical tests and examinations, including MRI's and nerve conduction studies, that yielded "minimal findings" that were inconsistent with the level of impairment to which plaintiff testified. He cited the portion of Dr. Schantzen's chart note quoted above, and noted that this treating doctor had cited discrepancies in plaintiff's reports concerning his symptoms.  The ALJ cited Dr. Schantzen's concerns about plaintiff's violation of his "narcotic drug contract," and her observation that plaintiff's "story of this incredibly bad back disease including spinal stenosis, disc bulging, and instrumentation" was not consistent with the results of objective testing.  He noted Dr. Schantzen's concern about plaintiff's motives, and her observation that plaintiff's paresthesias did not correlate with any anatomical nerve distribution.

The ALJ also cited inconsistencies in plaintiff's reports concerning the side effects he experienced from pain medication, and the absence of medical evidence supporting the severe limitations in the ability to perform basic daily activities to which plaintiff testified. He noted that carpal tunnel syndrome was not confirmed by objective testing, and cited the

absence of medical evidence that would support the numbness and severe hand limitations to which plaintiff testified.

The ALJ provided adequate reasons for finding plaintiff less than wholly credible.

b. **Credibility of lay witness**

Christine Wildey, plaintiff's wife, completed a report dated December 28, 2002, indicating that plaintiff was extremely inactive. She indicated that plaintiff never left the house, never went to a grocery store, never visited friends or relatives, participated in no social activities, never socialized with others, watched television 10 hours per day, could not drive, and never did any house work. She also reported that he bathed once a week, shaved once a week, and washed his hair once a week, and needed to be reminded to do so.

The ALJ rejected Ms. Widley's description of plaintiff's activities and limitations, correctly observing that her report indicated that plaintiff did "basically nothing." The ALJ found that her appraisal of plaintiff's activities was "unrealistic and unsupported by the objective evidence." He correctly observed that Ms. Widley's statements concerning plaintiff's household activities were inconsistent with plaintiff's own statements, which indicated that plaintiff helped with some of the house work, and noted that her statements were inconsistent with plaintiff's relatively conservative treatment.

Plaintiff contends that the ALJ failed to provide sufficient reasons for rejecting lay evidence offered by Ms. Wildey. I disagree. An ALJ must provide a reason that is "germane" for rejecting the statements of a lay witness. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ satisfied this requirement here. His observation that Ms. Wildey's report concerning plaintiff's level of activity was unrealistic is supported by the record. His observation that Ms. Wildey described a level of activities that was even more limited than plaintiff's own description is accurate, and especially pertinent, given that Ms. Wildey's report was made some 18 months earlier than plaintiff's own testimony, and plaintiff testified that his condition had deteriorated during that period. The ALJ's assertion that plaintiff's

course of conservative treatments was inconsistent with the level of inactivity she described is also supported by the record.

### 3. **ALJ's reliance on VE's testimony**

At the second hearing, the ALJ posed a vocational hypothetical describing an individual with plaintiff's age, education, and experience who was limited to light work, could lift 20 pounds occasionally and 10 pounds frequently, could stand/walk 6 hours in an 8-hour workday, could sit the same length of time, had a "push-pull" capacity limited only by the weight restrictions imposed, and could stoop and crawl only occasionally. The VE testified that the described individual could work as a maintenance dispatcher, a courier/driver, and an electronics inspector.

In response to further questioning by the ALJ, the VE testified that an individual who needed to lie down every one to one and a half hours and would be unable to come to work on four or five "really bad days" a month could not "hold sustained employment." In response to questioning by plaintiff's attorney, the VE testified that an individual who needed to take unscheduled five to ten minute breaks throughout the workday could not sustain competitive employment.

Plaintiff contends that the restrictions added to the ALJ's original vocational hypothetical are fully supported by medical opinions and by plaintiff's testimony which the ALJ improperly rejected. He asserts that the rejected evidence should be credited as a matter of law, and that the VE's testimony that an individual with those restrictions cannot sustain employment requires a finding of disability. I disagree. For the reasons set out above, I conclude that the ALJ provided adequate support for his assessment of the medical opinions and the testimony in question. Under these circumstances, the ALJ did not err in relying on the VE's testimony in response to a less restrictive vocational hypothetical.

**<u>Conclusion</u>**

The decision of the Commissioner denying plaintiff's applications for disability

insurance benefits and supplemental security income payments is AFFIRMED.

DATED this 2nd day of March, 2011.


/s/ John Jelderks
John Jelderks
U.S. Magistrate Judge